ORIGINAL

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
SONIA OSORIO,

                Plaintiff,

     -against-

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
-----------------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 05-CV-1188 (FB)

*Appearances:*
*For the Plaintiff:*
GEORGE POULOS, ESQ.
29-16 23rd Avenue
New York, NY 11105

*For the Defendant:*
ROSLYNN R. MAUSKOPF, ESQ.
United States Attorney
Eastern District of New York
By: STEVEN M. WARSHAWSKY, ESQ.
Assistant United States Attorney
147 Pierrepont Plaza
Brooklyn, New York 11201

**BLOCK, Senior District Judge:**

        Plaintiff Sonia Osorio ("Osorio") seeks review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB"). Both parties move for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons stated below, the Commissioner's decision is reversed and the case is remanded for further development of the record.

I.

The following facts are taken from the Administrative Record ("A.R."):

From July 1968 until she was terminated in January 1991, Osorio worked as a claims examiner at Blue Cross Blue Shield. She subsequently filed three separate applications for DIB. The first, filed on May 6, 1991, alleged that she had been disabled since January 28, 1991; that application was denied by an Administrative Law Judge ("ALJ") on October 27, 1992. The second, filed on June 29, 1994, alleged that she had been disabled since October 28, 1992, "due to severe back pain"; in a decision dated August 14, 1996, the ALJ in that case considered Osorio's physical and mental impairments – discussing, *inter alia*, the findings of a 1994 mental status exam – and held that she was not disabled because her residual functional capacity ("RFC") permitted her to return to her past work. *See* A.R. at 233-240.[1]

Osorio filed her third DIB application, the subject of this litigation, on October 7, 1996, claiming that she had been disabled since August 15, 1996, due to constant back pain and colon problems. After receiving a final unfavorable determination from the Commissioner, she sought review in district court; by order dated February 14, 2002, her claim was remanded for further development of the record with respect to her treating sources. A new hearing was held on March 18, 2003, before the same ALJ who denied this most recent application; in a written decision dated August 28, 2003, the ALJ found that

---

[1]There is no evidence in the record that Osorio appealed either denial of benefits.

Osorio was insured for DIB through December 31, 1996, but determined that she was not disabled as of that date. In reaching that conclusion, the ALJ applied the familiar five-step process, finding at step four that Osorio was able to perform her prior work. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied her request for review on January 15, 2005. Osorio timely sought judicial review.[2]

## II.

"In reviewing the final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

Osorio challenges the Commissioner's decision on three grounds. First, she argues that the ALJ exhibited bias against her during the March 19th hearing. Second, with respect to step three, she argues that the record contains substantial evidence supporting a finding that her impairments met or medically equaled a listed impairment. Third, with respect to step four, she argues that the ALJ misapplied the treating physician rule, improperly disregarded her subjective complaints, and improperly failed to seek a retrospective psychiatric assessment. The Court addresses each argument in turn.

---

[2]Based on a separate claim for Supplemental Security Income, Osorio was found disabled as of February 1999. *See* A.R. at 306-09; Docket Entry #19, Ex. 1 (ALJ Decision dated Apr. 26, 2000), at 4-5 (citing persistent and severe low back and knee pain).

3

## A. Bias

Osorio argues that the ALJ's decision should be reversed because he was "unnecessarily adversarial, hostile, and argumentative" during the March 19th hearing. Pl.'s Mem. of Law at 5. Specifically, she complains that the ALJ (1) "needlessly began the Hearing by questioning why [the district court] had ordered a Remand," (2) initially refused to accept a written list of medications, (3) asked "totally irrelevant questions" regarding Osorio's termination, (4) "went far beyond obtaining clarifying answers [from Osorio] and in effect began forcing [her] to state what he wanted to hear," (5) prevented Osorio's attorney from questioning her regarding her work history and subjective complaints of pain and exertional limitations. *Id.* at 6-8, 10. Finally, she argues that "[h]ad he not been interrupted [by the ALJ,] Dr. Goodman could have stated that [Osorio's] impairments are equivalent to meeting a listing or that in combination her impairments equal or meet a listing." *Id.* at 12.

The Supreme Court has held that "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge" unless "they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Upon careful review of the March 19th hearing transcript, particularly those portions cited in plaintiff's brief, it is clear that the ALJ's behavior did not rise to the level of antagonism contemplated by this standard, or

4

that his questions and comments were so clearly irrelevant as Osorio contends.

With respect to Osorio's testimony, there is no indication that counsel was precluded from asking any questions about her work history or subjective complaints of pain or limitations. *See* A.R. 338-55 (Tr. of Hearing dated Mar. 19, 2003). On the contrary, he affirmatively told the ALJ that he had completed his questioning, *see id.* at 354, and did not ask for a second opportunity to question Osorio at any point during the remainder of the hearing.

With respect to Dr. Goodman's testimony, there is nothing in the transcript to support Osorio's speculation that, if Dr. Goodman was not interrupted by the ALJ, he would have testified that Osorio's impairments met or equaled a listed impairment. In any event, the ALJ afforded plaintiff's counsel ample opportunity to ask about Osorio's impairments, and counsel failed to follow up on this specific issue. *See id.* at 369-73. Since the burden of persuasion rests on the claimant at step three, *see Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996) ("If the claimant satisfies her burden of proving the requirements in the first four steps, the burden then shifts to the [Commissioner] to prove in the fifth step that the claimant is capable of working."), Osorio's claim in this regard is without merit.

## B. Step Three - Listed Impairments

Contrary to the ALJ's findings, Osorio argues that her impairments met or medically equaled a listed impairment: specifically, major dysfunction of a joint (Listing 1.02) and disorder of the spine (Listing 1.04). To meet a listed impairment, a claimant "must meet all of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

If a claimant is unable to meet a listed impairment, she may nonetheless qualify for benefits "by showing that her unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment" through "medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *See id.* at 531 (emphasis in original).

With respect to Listing 1.02, Osorio would have to show "gross anatomical deformity . . . and chronic joint pain and stiffness with signs of limitations of motion and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)." 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.02. Listing 1.04, as pertinent here, required Osorio to show "[l]umbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested chronic nonradicular pain and weakness." 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.04(C). Both listings require a finding that the condition resulted in an inability to ambulate effectively. *See* 20 C.F.R. pt. 404, subpt. P, app. 1 §§ 1.02(A), 1.04(C); *see also id.* § 1.00(B)(2)(b) (defining "inability to ambulate effectively").

Arguing that the record supports a finding that she was unable to ambulate effectively, Osorio cites an October 16, 1998 letter of treating physician Dr. Opran, stating that her condition had worsened over the previous two years and that she had significant difficulty ambulating. *See id.* at 17.[3] Even assuming that Dr. Opran's assessment described her condition in 1996 (during the relevant period of coverage) rather than 1998

---

[3]Osorio's description of this letter is practically identical to the ALJ's description of a June 10, 1998 letter by Dr. Opran. *See* A.R. at 287. The Court is unable to find either letter in the record but assumes that Osorio has described Dr. Opran's letter on this subject accurately.

6

(when the letter was written), that assessment would not be entitled to the controlling weight normally afforded to treating sources since it was "inconsistent with [ ] other substantial evidence in [the] case record," *Schaal v. Apfel*, 134 F.3d 496, 503 (2d Cir. 1998) (quoting 20 C.F.R. § 404.1527(d)(2)), which supports the ALJ's conclusion that she could still ambulate effectively. For example, examining internist Dr. Fajardo observed on August 9, 1996, that Osorio's peripheral joints had full range of motion with only some limitation of both knees and the right ankle, and that she was "able to sit, stand, walk, handle objects . . . and travel." *See* A.R. at 126-27. Moreover, notes from Elmhurst Hospital's Department of Rehabilitation Medicine dated November 1996 state that she used no assistive devices to walk, and that her knees had normal range of motion. *See id.* at 553-54. Even after Osorio's "date last insured," treatment notes show that she had good range of motion in both knees and could walk on heels and toes. *See, e.g., id.* at 517, 576, 579, 1051.

Osorio contends that Dr. Goodman testified that she could not use standard public transportation. While such testimony would have suggested an inability to ambulate effectively, *see* 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.00(B)(2)(b)(2) (describing "inability to use standard public transportation" as example of "ineffective ambulation"), Dr. Goodman testified only that Osorio would be unable to handle "long flights of steps" at some subway stops and could not stand for long periods of time on a bus; despite these limitations, he concluded that she would have no problem riding buses if she had a seat. *Id.* at 367-68. Thus, contrary to Osorio's contention, Dr. Goodman's testimony actually

supports the ALJ's finding.

In any event, Osorio has failed to show that she meets the remaining requirements of either listing. With respect to Listing 1.02, although the record demonstrates that she suffered from degenerative joint disease in both knees, *see* A.R. at 129, 152, Osorio fails to cite any evidence to support her claim that this condition met or medically equaled the requisite definition. With respect to Listing 1.04, when Osorio's counsel asked Dr. Goodman specifically whether her impairments met or equaled the listing, he stated that "[t]here [was] no mention of an appropriate radicular distribution of motor loss, weakness, sensory loss, and reflex loss" and that evidence in the record of "straight leg raising [was] not consistent with the loss of motion of the spine," *id.* at 378; Osorio does not cite any evidence to the contrary.

## C. Step Four - Ability to Perform Past Relevant Work

At step four, the ALJ found that Osorio retained the RFC to perform her past relevant work as a claims examiner. With respect to exertional limitations, that finding is supported by substantial evidence, namely: (1) the vocational expert's testimony that this was sedentary work, *see* A.R. at 384; (2) Dr. Goodman's testimony that she could still perform sedentary work despite her back, knee and ankle impairments, *see id.* at 363-65; (3) Dr. Fajardo's August 1996 assessment that she was able to sit, stand, walk, handle objects and travel, *see id.* at 127; and (4) the assessment of a state agency medical consultant, completed three months after Osorio's "date last insured," that she could frequently lift and/or carry ten pounds, stand and/or walk for a total of at least two hours in an eight-hour workday, sit about six hours in an eight-hour workday, and had unlimited pushing

8

and/or pulling ability, *see id.* at 97. Osorio nonetheless raises three challenges to the ALJ's step-four finding.

1. **Treating Physician**

Contrary to Osorio's contention, treating physician Dr. Onyema's assessment that she could perform only less than sedentary work, *see id.* at 271-274, was not entitled to controlling weight. *See* 20 C.F.R. § 404.1527(e) ("[T]he final responsibility for deciding ... issues [such as RFC] is reserved to the Commissioner. We will not give any special significance to the source of an opinion on [such] issues ...."). Even if the treating physician rule did apply, the ALJ's rejection of Dr. Onyema's opinion would not constitute reversible error since, as the ALJ concluded, that opinion was "not consistent with the medical findings from Elmhurst Hospital, the findings and assessment of an examining internist in August 1996, the findings and assessment of another examining physician in March 1997, [and] [Osorio's] activities," A.R. at 289. *See Schaal*, 134 F.3d at 503 (holding that treating physician's opinion not entitled to controlling weight where "inconsistent with [ ] other substantial evidence in [the] case record").

2. **Subjective Complaints**

With respect to Osorio's hearing testimony, the ALJ was not required to take her subjective complaints into account unless they could "reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(3). The record provides several examples of inconsistencies: (1) while Osorio testified that she used a walker since 1995, *see* A.R. at 340, treatment notes from Elmhurst Hospital show, once again, that she used no assistive devices in November 1996, *see id.* at

9

553; and (2) despite complaints of disabling pain, she was treated only conservatively with pain medication and physical therapy, *see id.* at 553, 568. The ALJ's rejection of Osorio's subjective complaints was therefore supported by substantial evidence, and will not be disturbed. *See Aponte v. Secretary, Dept. of Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) ("If the Secretary's findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." (citations omitted)).

### 3. Nonexertional Limitations – Retrospective Psychiatric Assessment

In addition to challenging the ALJ's findings with respect to her exertional limitations, Osorio also argues that, in assessing her RFC, the ALJ should have also taken into account nonexertional limitations stemming from her claimed depression. In that regard, she argues that the ALJ's determination that she "had no limitations secondary to a psychiatric condition" during the relevant period, A.R. at 288, was based on an incomplete record.

The Second Circuit has long held that "the ALJ, unlike a judge in a trial, must himself affirmatively develop the record," *Echevarria v. Secretary of Health & Human Servs.*, 685 F.2d 751, 755 (2d. Cir 1982); this duty exists "even when, as here, the claimant is represented by counsel." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996). Specifically, this duty requires the Commissioner to "seek additional evidence or clarification" from the claimant's treating sources when their reports "contain[ ] a conflict or ambiguity that must be resolved." 20 C.F.R. § 404.1512(e)(1). If the information obtained from the claimant's medical sources is not sufficient to make a disability determination, the Commissioner

10

must ask the claimant to attend one or more consultative evaluations. *Id.* at § 404.1512(f). The Commissioner's regulations further provide that an ALJ "will consider only impairment(s) you say you have *or* about which we receive evidence," 20 C.F.R. § 404.1512(a) (emphasis added); "[t]he disjunctive phrasing of this rule requires an ALJ to investigate the disabling effects of an impairment if the record contains evidence indicating that such an impairment might exist." *Prentice v. Apfel*, 11 F. Supp. 2d 420, 426 (S.D.N.Y. 1998) (citing 20 C.F.R. § 404.1512(a)).

The record contains ample evidence that a psychiatric impairment might have existed during the relevant period, namely: (1) reference in the August 14, 1996 ALJ decision to the 1994 mental status exam diagnosing Osorio with major depression, *see* A.R. at 236;[4] (2) the January 8, 1998 report of treating physician Dr. Onyema that Osorio needed "psychiatric management of depressive mood," *id.* at 274; and, most notably, (3) records of Osorio's eleven-day psychiatric hospitalization in September 1999 for suicidal ideation, *see, e.g., id.* at 1186-87, 1199-1206. That the ALJ's duty to develop the record was triggered by this evidence cannot be disputed, especially since (1) Osorio's counsel specifically requested a consultative psychiatric examination at the January 13, 1998 pre-remand hearing, *see id.* at 48, and (2) during the March 18, 2003 hearing, the ALJ engaged in a lengthy discussion with Osorio about her depression and psychiatric hospitalization, *see* A.R. at 355-58.

The case must therefore be remanded for development of the record on this

---

[4]The 1994 report itself is not part of the administrative record.

11

issue. *See Parker v. Harris*, 626 F.2d 225 (2d Cir. 1980) (holding that remand for further development of the record is appropriate when "there are gaps in the administrative record").

On remand, the ALJ shall fully develop the record regarding the nature and severity of Osorio's psychiatric impairments between August 15 and December 31, 1996, including but not limited to, obtaining the 1994 mental status exam referenced in the August 14, 1996 ALJ decision. Depending on what surfaces, the ALJ should determine whether retrospective diagnoses from treating and/or consultative medical sources are warranted.

## CONCLUSION

For the foregoing reasons, the case is remanded for further proceedings in accordance with this Memorandum and Order. Although the Court has rejected Osorio's claim of bias as an independent basis for remand, it nonetheless urges the Commissioner, in light of all the circumstances, to re-assign the case to a different ALJ.

**SO ORDERED.**

/SIGNED/
_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
May 25, 2007